# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>BRONSON PARTNERS, LLC, MARTIN HOWARD, H & H MARKETING, LLC, and SANDRA HOWARD,<br><br>    Defendants. | CIVIL ACTION NO.<br>3:04cv1866 (SRU) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

The Federal Trade Commission ("FTC") brought this enforcement action challenging as false advertising the claims that the defendants, Bronson Partners, LLC ("Bronson"), Martin Howard, H & H Marketing, LLC, and Sandra Howard (collectively "defendants"), made in their advertisements for two products: Chinese Diet Tea and the Bio Slim Patch. The exemplar advertisement for Chinese Diet Tea touts the tea almost exclusively as a weight-loss product, and, when read objectively and in context, virtually guarantees the user that, by drinking the tea, the user will lose large quantities of weight in a relatively short period of time without dieting or exercising. The defendants also advertised the Bio Slim Patch as an effective weight loss product.[1]

The FTC seeks a permanent injunction and damages, and has moved for summary judgment on all claims. For reasons that follow, the FTC's motion is granted with respect to liability.

---

[1] Defendants concede liability with respect to the Bio Slim Patch, but contest the FTC's damage calculation related to that claim. Because I address only liability in this ruling, I do not further discuss the Bio Slim Patch.

## I.       Background

Chinese Diet Tea is not materially different from any other green tea product on the market.  The defendants' exemplar one-page advertisement for Chinese Diet Tea is entitled, "Powerful Green Diet Tea, **SHEDS POUND AFTER POUND OF FAT** – **FAST!**"[2]  It includes a picture of a slim Asian woman on a scale wearing what appears to be a bathing suit or tight-fitting tank top.  The advertisement states:

> You eat your favorite foods – but STILL lose weight!
> Eliminates an amazing 91% of absorbed sugars.
> Prevents 83% of fat absorption.
> Doubles your metabolic rate to burn calories fast.
> Powerful herbal formula helps you stop snacking.
> Let this powerful Chinese Green Diet Tea help you to lose those unwanted
> pounds.  Can you imagine losing weight by simply drinking a cup of
> refreshing tea?  Well, that is all you now have to do to lose weight with one of
> the "easiest" and most effective diets ever discovered.  Chinese Green Diet
> Tea is a 2000 year old secret remedy now available in the U.S. Obesity is a big
> problem in Western societies but is almost unheard of in China.  That is
> because millions of Chinese men and women regularly drink herbal tea after
> every meal.  Clinical trials have shown that by drinking a cup of Chinese
> Green Diet Tea your body will absorb less sugar and animal fats.  Participants
> on Chinese Green Diet Tea clinical trials carried on eating a normal healthy
> measure of sugar and fats – but they still lost weight.  Just make sure you
> drink one cup of Chinese Green Diet Tea after each meal to neutralize the
> absorption of fattening foods.  You'll get the satisfaction and flavor of eating a
> balanced diet but without any fattening effects.

The advertisement continues to assure the reader that Chinese Diet Tea is:

> **GUARANTEED!** Chinese Green Diet Tea has been clinically trialed on 163
> patients.  All participants lost between 18 lbs and 75 lbs over the 12 week

---

[2] Unless otherwise noted, all quotes are taken from the exemplar advertisement, which is attached as an appendix to this ruling.  The exemplar advertisement ran in the December 26-28, 2003 issue of *USA Weekend*.  Defendants have used varying but similar advertisements.  The extent to which any particular advertisement caused purchases is an issue that will be addressed at the upcoming hearing on damages.

trial period.  If you do not lose similar amounts of weight we guarantee to refund your purchase price in full (less s/h).  **REMEMBER**, the more Chinese Green Diet Tea you drink, the more weight you may lose!

It also asserts that "[r]esearchers found that those who drank Chinese Diet Green Tea burned an additional 500 calories per week, with no change in diet or physical activity," and that:

Chinese Green Diet Tea's secret herbal ingredients act in four ways to help you lose weight:
1) Reduces sugar absorption by an amazing 91%.  This means you can eat sweet buns and chocolate without putting on so much weight.  But be careful – drinking Chinese Green Diet Tea is not a license to gorge yourself.
2) Reduces the absorption of animal fats and dairy products by as much as 83%.  This controls the fattening effects of butter, cheese, pate, sausages and fatty meats.
3) Doubles the digestion of food in the intestine.  This prevents food laying in your stomach for 24 hours or more and contributing to that "pot belly" look.  The faster digestion of food means fewer calories are absorbed into the body.
4) Acts as an effective appetite suppressant to reduce snacking.

The advertisement also includes the following warning: "**WARNING:** Doctors recommend that weight loss must be achieved gradually over an extended 8-12 week period.  We therefore recommend that you do not lose weight too suddenly.  If very rapid weight loss occurs, stop taking Chinese Green Diet Tea for 10-14 days and consult your doctor."

The advertisement continues to offer various "courses:"

- 4 Week Course – You'll lose up to 25 lbs – $24.95
- 8 Week Course – You'll lose up to 50 lbs – $39.95 – Save $16.00
- 12 Week Course – You'll lose up to 75 lbs – 49.95 – Save $32.90

The advertisement contains several "testimonials:"

- **I Lost 64 lbs in 10 weeks!**
- After 10 weeks my weight was down to 104 lbs.  I lost weight so fast my doctor ordered me to slow down.
- We (my husband and I) have lost 45 lbs. so far.  Send extra order

forms for friends.
- I have been on the program 6 weeks and have not religiously followed the schedule of a cup of tea after each meal. However, I have gone from 240 lbs. down to 210 lbs. I feel better.

The order form for Chinese Diet Tea states "Please RUSH me by First Class Mail the following order of *guaranteed to help you lose weight* **Chinese Green Diet Tea bags**." Finally, the advertisement provides that Chinese Diet Tea "**<u>Makes Great Iced Tea!</u>**"

The FTC filed a four-count complaint pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to secure a permanent injunction against and disgorgement of allegedly ill-gotten gains from the defendants. The FTC alleges that the defendants violated Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, by making false and unsubstantiated claims with respect to Chinese Diet Tea (counts one and two), and by making false and unsubstantiated claims with respect to the Bio-Slim Patch (counts three and four). They now move for summary judgment on all counts.

## II.   Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523

(2d Cir. 1992).  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.  Thus, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Id*. at 257.

## III.     Liability Under the FTC Act

The FTC Act, 15 U.S.C. § 52(a), provides that "[i]t shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement . . . for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce of food, drugs, devices, services, or cosmetics."  *Id*.  Section 52(b) of the FTC Act continues that the "dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in or affecting commerce within the meaning of section 5."  *Id*.  Section 5 of the FTC Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful," and that the FTC "is hereby empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a).

The Act defines "false advertisement" as follows:

> The term "false advertisement" means an advertisement, other than labeling, which is misleading in a material respect; and in determining whether any advertisement is misleading, there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations or material with respect to consequences which may result

from the use of the commodity to which the advertisement relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

15 U.S.C. § 55. Two types of false advertising are actionable: "(1) advertising which makes claims which are literally false on their face, and (2) advertising which, although literally true on its face, is perceived by a significant proportion of the relevant market as making 'subliminal' or 'implicit' claims which are provably false. With regard to the second type of false advertising, the courts sometimes say that the advertising has a tendency to mislead, confuse or deceive." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir. 1999) (quoting *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 614 F. Supp. 1278, 1319 (S.D.N.Y. 1985)).

To prove a violation of Section 5, the FTC must show three elements; (1) the existence of "a representation, omission, or practice," that is (2) "likely to mislead consumers acting reasonably under the circumstances," and (3) "the representation, omission, or practice is material." *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006) (internal quotations omitted). "To be actionable under section 5, these misrepresentations or practices need not be made with an intent to deceive. Indeed, an advertiser's good faith does not immunize it from responsibility for its misrepresentations. Moreover, the omission of material information, even if an advertisement does not contain falsehoods, may cause the advertisement to violate section 5." *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1988) (internal quotations and citations omitted); *see also Verity*, 443 F.3d at 63.

A.     Does the Advertisement for Chinese Diet Tea Make the Alleged Claims?

In the complaint, the FTC alleges that the Chinese Diet Tea advertisement makes the following claims:

(a) Chinese Diet Tea causes rapid and substantial weight loss without the need to reduce caloric intake or increase physical activity;
(b) Chinese Diet Tea enables users to lose as much as six pounds per week over multiple weeks and months without the need to reduce caloric intake or increase physical activity;
(c) Chinese Diet Tea enables users to lose substantial weight while enjoying their favorite foods, including foods high in sugar and animal fat;
(d) Chinese Diet Tea blocks the absorption of fat and calories thereby enabling users to lose substantial weight;
(e) Chinese Diet Tea causes substantial weight loss for all users; and
(f) Chinese Diet Tea is clinically proven to cause rapid and substantial weight loss without the need to reduce caloric intake or increase physical activity.

Pl. Am. Compl. at ¶ 18(a)-18(f).

Defendants offer several reasons why the Chinese Diet Tea advertisement does not make those claims. First, the defendants argue that several of the claims in the advertisement were "merely testimonial in nature," and presumably, that they should be given less (or no) weight. Defendants assert that there are fundamental differences in the way testimonials, implied and express claims are to be treated.

But simply because an advertiser labels a statement a "testimonial" does not render the statement irrelevant to determining the claims made in an advertisement. To the contrary, "[w]hen an advertisement contains a testimonial reflecting the experience of an individual with a product, there is an implicit representation that such experience reflects the typical or ordinary results anyone may anticipate from use of the product." *In the Matter of Porter & Dietsch, Inc.*, 90 F.T.C. 770, 1977 FTC LEXIS 11, *147 (1977). The defendants' purported treatment of the testimonials is also inconsistent with the proper approach to interpreting an advertisement. The Second Circuit, in *FTC v. Sterling Drug, Inc.*, 317 F.2d 669 (2d Cir. 1963), held that the "purpose of the [FTC Act] is not to punish the wrongdoer but to protect the public," so "the

cardinal factor is the probable effect which the advertiser's handiwork will have upon the eye and mind of the reader." *Id*. at 675. "It is therefore necessary in these cases to consider the advertisement in its entirety and not to engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately." *Id*. The consumer "does not ordinarily carefully study or weigh each word in an advertisement. The ultimate impression upon the mind of the reader arises from the sum total of not only what is said but also of all that is reasonably implied." *Id*. In this case, the testimonials in the Chinese Diet Tea advertisement are clearly tiles contributing to the mosaic. Although not dispositive of whether the advertisement makes the alleged claims, the testimonials are certainly relevant to the analysis.

Second, the defendants assert that the court cannot determine whether an advertisement makes a particular claim without extrinsic evidence about how a reasonable consumer would perceive the advertisements. At oral argument, defendants suggested that "in a false advertising case . . . the parties seeking to prove a false advertisement [have] the burden of coming forward with extrinsic evidence" or "consumer data showing what impression people take away from the ad." Transcript of 9/19/07 Hearing on Motion at 6 ("Hearing Tr."). For support, defendants cite *Kraft, Inc. v FTC*, 970 F.2d 311 (7th Cir. 1992); *FTC v. Amy Travel Svcs., Inc.*, 875 F.2d 564 (7th Cir. 1989);[3] *In re Thompson Medical Co.*, 104 F.T.C. 648, 1984 FTC LEXIS 6 (1984); and *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007), for the proposition that the court *must* look to extrinsic evidence to determine whether an advertisement makes a certain claim. None of those cases, however, stands for such a proposition.

---

[3] *FTC v. Amy Travel*, does not even broach the subject of whether a court must, in all cases, rely on extrinsic evidence when determining whether an advertisement makes a particular claim.

To the contrary, the need for extrinsic evidence to determine whether an advertisement makes a particular claim hinges on the type of claim the advertisement makes. Any given advertisement can assert two different types of claims: express claims or implied claims. If an advertisement makes a claim expressly, then extrinsic evidence is not necessary. *See Kraft, Inc. v FTC*, 970 F.2d at 318 n.4 ("Express claims directly represent the fact at issue while implied claims do so in an oblique or indirect way. To illustrate, consider the following. Suppose a certain automobile gets poor gas mileage, say, 10 miles per gallon. One advertisement boasts that it gets 30 miles per gallon while another identifies the car as the 'Miser,' depicts it rolling through the countryside past one gas station after another, and proclaims that the car is inexpensive to operate. Both ads make deceptive claims; the first does so expressly, the second does so impliedly.")[4] (citation omitted).

Even if an advertisement makes a claim by implication, extrinsic evidence is not always necessary. In *Kraft, Inc. v FTC*, the Seventh Circuit upheld the FTC's decision finding that an advertisement made, by implication, certain false and misleading claims, despite the fact that the FTC had not presented any extrinsic evidence to support its claims. Kraft had advanced the same

---

[4] It is useful to expound upon this hypothetical. Consider the example of the "express" claim – that a particular automobile actually gets 10 miles to the gallon, but is advertised to get 30 miles to the gallon. The advertisement is expressly making a false claim, that the automobile gets 30 miles to the gallon when it really only gets 10 miles to the gallon. But the same advertisement is also making the functional equivalent of at least one other express claim, namely, that the automobile gets more than 10 miles per gallon, even though the advertisement does not specifically state "gets more than 10 miles per gallon." An express claim thus encompasses the explicit statements in the advertisement itself, but also, necessary implications derived from the statements themselves. For example, in the hypothetical, the advertiser could not claim that, by stating the automobile gets 30 miles to the gallon, he has not expressly made the claim that the automobile "gets more than 10 miles per gallon." The claim "gets more than 10 miles to the gallon" is self-evident from the face of the advertisement because it is a necessary implication from the text.

argument that the defendants argue here, namely, that the FTC must present some extrinsic consumer evidence in all cases where the FTC alleges an implied, as opposed to an express claim. But the *Kraft* Court disagreed. It held that "[i]n determining what claims are conveyed by a challenged advertisement, the Commission relies on two sources of information: its own viewing of the ad and extrinsic evidence. Its practice is to view the ad first and, if it is unable on its own to determine with confidence what claims are conveyed in a challenged ad, to turn to extrinsic evidence." 970 F.2d at 318. The *Kraft* Court ultimately opted not to adopt a "*per se*" rule requiring extrinsic evidence because such a rule would rest "on the faulty premise that implied claims are inescapably subjective and unpredictable." *Id*. at 319. The Court held instead that "implied claims fall on a continuum, ranging from the obvious to the barely discernible." *Id*. The Court continued that the FTC, "when confronted with claims that are implied, yet conspicuous, extrinsic evidence is unnecessary because common sense and administrative experience provide the Commission with adequate tools to makes its findings." *Id*. at 320. The Court concluded that the FTC does not need extrinsic evidence to determine whether an advertisement makes an implied claim as long as those claims are reasonably clear from the face of the advertisement. *Id*. at 319.

*In re Thompson Medical Co.* also does not stand for the proposition that extrinsic evidence is always necessary. In that case, the FTC found that "the Commission employs two different techniques in evaluating whether an advertisement contains implied claims." 104 F.T.C. 648, 1984 FTC LEXIS 6, *313. The first is "to look at evidence from the advertisement itself." *Id*. The FTC "often conclude[s] that an advertisement contains an implied claim by evaluating the contents of the advertisement and the circumstances surrounding it. This

technique is primarily useful in evaluating advertisements whose language or depictions are clear enough, though not express, for [the FTC] to conclude with confidence after examining the interaction of all the different elements in them that they contain a particular implied claim." *Id*. The FTC requires extrinsic evidence only "[i]f [its] initial review of evidence from the advertisement itself does not allow [the FTC] to conclude with confidence that it is reasonable to read an advertisement as containing a particular implied message." *Id*.

Finally, *Warner Cable, Inc. v. DIRECTV, Inc*. also does not stand for the cited proposition. In that case, the Second Circuit Court of Appeals considered whether a particular advertisement was false or misleading under the Lanham Act.[5] The Court held "that an advertisement can be literally false even though it does not explicitly make a false assertion, if the words or images, considered in context, necessarily and unambiguously imply a false message." 497 F.3d 144 at *2. In so holding, the Court formally adopted the "false by necessary implication" doctrine:

> Under this doctrine, a district court evaluating whether an advertisement is literally false must analyze the message conveyed in full context, it must consider the advertisement in its entirety and not . . . engage in disputatious dissection. *If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required.* However, only an unambiguous message can be literally false. Therefore, if the language or graphic is susceptible to

---

[5] The Lanham Act grants a private right of action for false advertisement, whereas the FTC must bring actions under the FTC Act. *Compare* 15 U.S.C. § 45(a)(2) (The FTC "is hereby empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce") *with* 15 U.S.C. § 1125(a) ("Any person who [violates the enumerated provisions of the Lanham Act] shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."). Some courts have nevertheless held that, at least in certain respects, Lanham Act claims are "analogous" to FTC Act claims. *Kraft*, 970 F.2d at 319.

more than one reasonable interpretation, the advertisement cannot be literally
false. There may still be a basis for a claim that the advertisement is
misleading, but to resolve such a claim, the district court must look to
consumer data to determine what the person to whom the advertisement is
addressed finds to be the message. In short, where the advertisement does not
unambiguously make a claim, the court's reaction is at best not determinative
and at worst irrelevant.

*Id*. at *29-*32 (internal citations and quotations omitted) (emphasis added).[6]

As set forth in greater detail below, I can conclude from the face of the advertisement that

the advertisement makes the alleged claims. The advertisement is not subtle. It does not employ

innuendo, subliminal messages or hints to convey its message. It does not contain conflicting

messages that are reasonably susceptible to different interpretations. It makes no meaningful

qualifications. Instead, it is clear, stark and dramatic.[7] Only four words in the entire

advertisement do not relate to weight loss in some way: "makes great iced tea." Defendants

attempt to torture the language in the advertisement to create an ambiguity where none exists.

For example, they point out that the advertisement does not use the specific terms alleged in the

complaint. For one, that is not true of all claims. And to the extent it is true of other claims, the

advertisement's statements are so clear, repetitive, and unambiguous that they constitute the

---

[6] I note that "[s]tatements susceptible of both a misleading and a truthful interpretation
will be construed against the advertiser." *Country Tweeds, Inc. v. FTC*, 326 F.2d 144, 148 (2d
Cir. 1964).

[7] The defendants have submitted additional briefing regarding the recent case *FTC v. QT,
Inc.*, 512 F.3d 858 (7th Cir. 2008). They rely on that case for the proposition that certain
scientific evidence may not be necessary to support claims made in an advertisement, and that "a
statement that is plausible but has not been tested in the most reliable way cannot be condemned
out of hand." *QT*, 512 F.3d at 861. Here, the claims made in the Chinese Diet Tea
advertisements are so stark as to be implausible. There is no material fact with regard to the
falsity of those advertisements not because the defendants have failed to produce a placebo-
controlled double-blind study to support their claims, but instead for the reasons discussed
throughout this opinion.

functional equivalent of express claims.[8]

        1.        *Claim One – Chinese Diet Tea Causes Rapid and Substantial Weight Loss*
                *Without the Need to Reduce Caloric Intake or Increase Physical Activity*

      With respect to the claim that Chinese Diet Tea will cause "substantial weight loss," the advertisement provides that Chinese Diet Tea is "**GUARANTEED!** Chinese Green Diet Tea has been clinically trialed on 163 patients. All participants lost between 18 lbs and 75 lbs over the 12 week trial period. If you do not lose similar amounts of weight we guarantee to refund your purchase price in full (less s/h)."[9] At oral argument, defendants suggested that the guarantee is a "satisfaction guarantee" and not a "weight-loss guarantee." Hearing Tr. at 6 (The guarantee "is a guarantee of satisfaction. If you're not satisfied, we guarantee that you'll receive your money back"). But the word "satisfaction" appears nowhere in the guarantee, or in the advertisement. What does appear in the guarantee is that "*[a]ll* participants lost between 18 lbs and 75 lbs over the 12 week period. *If you do not lose similar amounts of weight* we guarantee to refund your purchase price in full." (emphasis added). Indeed, the very order form for the tea states "[p]lease RUSH me by First Class Mail the following order of **guaranteed to help you lose weight Chinese Green Diet Tea bags**."

      In addition, the advertisement assures the reader that she will "**SHED[] POUND AFTER POUND OF FAT – FAST!**" At oral argument, the defendants argued that "pound after pound

---

[8] I hold that those claims are the functional equivalent of express claims. But even if they were not the functional equivalent, the claims are certainly so strongly implied and conspicuous that extrinsic evidence would not be necessary under *Kraft* and *Time Warner*.

[9] Although not directly relevant to the claimed falsity, it is worth noting that defendants failed to present any admissible evidence that any such clinical trial was conducted. Thus, the advertisement is literally false, though not in a manner addressed by the complaint.

of fat" means "a minimum of two" pounds. Hearing Tr. At 26. "[T]he first pound is a pound,

'after pound' is a second pound. . . . Shed pound after pound of fat fast, to me that means it's a

promise . . . if you want to parse this out . . . that you'll shed at least two pounds fast." *Id*.

Again, defendants' purported interpretation of the advertisement is unreasonable.

Many other statements in the Chinese Diet Tea advertisement unambiguously state that

users will lose substantial amounts of weight. The advertisement offers various "courses," which

explicitly state that the user will lose up to 25 pounds in four weeks, up to 50 pounds in eight

weeks, or up to 75 pounds in twelve weeks. It allegedly "doubles" the user's metabolic rate. The

testimonials are stark: "I Lost 64 lbs in 10 weeks!;" "After 10 weeks my weight was down to 104

lbs;" "We (my husband and I) have lost 45 lbs. so far. Send extra order forms for friends;" "I

have been on the program 6 weeks and have not religiously followed the schedule of a cup of tea

after each meal. However, I have gone from 240 lbs. down to 210 lbs. I feel better." In short,

almost every statement in the advertisement says essentially the same thing – drink Chinese Diet

Tea and you will lose substantial amounts of weight in a matter of weeks.

The Chinese Diet Tea advertisement also assures the reader that the substantial weight

loss will occur rapidly. Again, the advertisement indicates that the user will "**SHED[] POUND

AFTER POUND OF FAT – FAST!**" At the hearing, the defendants implied that the term

"fast" may not be synonomous with "rapid" (although counsel later appeared to concede that the

terms were "roughly similar.") Hearing Tr. at 25. The defendants press the argument that the

claim hinges upon the Court's subjective definition of the words "rapid" and "fast." Defendants'

proffered interpretation is again unreasonable.

But even if the term "fast" does not mean "rapid," the advertisement makes claim after

claim that necessarily and unambiguously imply that the user will rapidly lose weight. The advertisement warns that "weight loss must be achieved gradually over an extended 8-12 week period. We therefore recommend that you do not lose weight too suddenly. If very rapid weight loss occurs, stop taking Chinese Green Diet Tea for 10-14 days and consult your doctor." One purported user allegedly reported that she "lost weight so fast [that her] doctor ordered [her] to slow down." The advertisement also purports to "double" the user's metabolic rate to "burn calories fast," and sets forth a schedule that clearly implies the user will lose substantial amounts of weight within four to twelve weeks.

The advertisement also assures readers that they need not reduce caloric intake or increase physical activity to lose the stated amount of weight. Chinese Diet Tea drinkers allegedly may still "**eat your favorite foods - but STILL lose weight!**" The advertisement claims that "all [the user] now [has] to do to lose weight" is "simply drink[] a cup of refreshing tea." Chinese Diet Tea causes users to burn additional calories "with no change in diet or physical activity." "Participants on Chinese Green Diet Tea clinical trials carried on eating a normal healthy measure of sugar and fats – but they still lose weight." As long as the user drinks a cup of tea after every meal, she "can eat sweet buns and chocolate without putting on so much weight." The defendants virtually conceded as much at the hearing on the motion: "I would agree with you that . . . there's no question the ad focuses primarily on the weight loss qualities of green tea, but . . . we feel the scientific evidence shows that green tea . . . will be a . . . healthful means of losing weight . . . without any additional exercise." Hearing Tr. at 8.

The advertisement also assures that using the tea "means you can eat sweet buns and chocolate without putting on so much weight," and that it "controls the fattening effects of butter,

cheese, pate, sausages and fatty meats." Defendants stress that the advertisement asserts that "drinking Chinese Green Diet Tea is not a license to gorge yourself." Not gorging oneself, however, is a far cry from stating, or implying, that a user must diet or exercise to lose the advertised amount of weight, especially when read in context of the other statements in the advertisement. Even if the warning against "gorging" implied that tea drinkers would need to reduce caloric intake to lose weight, one true statement, in the presence of a mass of false and misleading statements, does not render an otherwise misleading advertisement non-misleading.

In short, the advertisement is literally chock full of statements that, in all but the most express terms, make the claim that drinking Chinese Diet Tea will cause the user to experience rapid and substantial weight loss without reducing caloric intake or increasing physical activity. Although the advertisement does not use the exact words "rapid," "substantial," or "without increasing physical activity or reducing caloric intake," I conclude, with the utmost confidence, that the advertisement, especially when read in context, makes those claims so unambiguously that the claims are the functional equivalent of express claims.

        2.      *Claim Two – Chinese Diet Tea Enables Users to Lose as Much as Six Pounds Per Week Over Multiple Weeks and Months Without the Need to Reduce Caloric Intake or Increase Physical Activity*

The Chinese Diet Tea advertisement offers the following "courses:"

- 4 Week Course – You'll lose up to 25 lbs – $24.95
- 8 Week Course – You'll lose up to 50 lbs – $39.95 – Save $16.00
- 12 Week Course – You'll lose up to 75 lbs – 49.95 – Save $32.90

When the numbers are averaged out, the advertisement expressly claims that users will lose up to 6.25 pounds per week for up to 12 weeks. The advertisement also provides that "Chinese Green Diet Tea has been clinically trialed on 163 patients. All participants lost

between 18 lbs and 75 lbs over the 12 week trial period.  If you do not lose similar amounts of

weight we guarantee to refund your purchase price in full (less s/h)."  Again, when averaged out,

the advertisement expressly claims the user will lose up to 6.25 pounds per week for up to 12

weeks.

In addition, for reasons set forth in the preceding section, the Chinese Diet Tea

advertisement also claims that users need not increase physical activity or decrease caloric intake

to lose weight.  As such, the Chinese Diet Tea advertisement expressly claims that drinkers will

lose as much as six pounds per week over multiple weeks and months without the need to reduce

caloric intake or increase physical activity.

3.     *Claim Three – Chinese Diet Tea Enables Users to Lose Substantial*
       *Weight While Enjoying Their Favorite Foods, Including Foods High in*
       *Sugar and Animal Fat*

The advertisement also provides that users will "**eat [their] favorite foods - but STILL**

**lose weight!**"  "Participants on Chinese Green Diet Tea clinical trials carried on eating a normal

healthy measure of sugar and fats - but they still lost weight."  It also claims that Chinese Diet

Tea has "secret herbal ingredients" that "[r]educe[] sugar absorption by an amazing 91%.  This

means you can eat sweet buns and chocolate without putting on so much weight."  It provides

that drinking Chinese Diet Tea also "[r]educes the absorption of animal fats and dairy products

by as much as 83%.  This controls the fattening effects of butter, cheese, pate, sausages and fatty

meats."  Those statements, especially when read in context of the entire advertisement, constitute

the functional equivalent of an express claim that Chinese Diet Tea enables users to lose

substantial weight while enjoying their favorite foods, including foods high in sugar and animal

fat.

4.      *Claim Four – Chinese Diet Tea Blocks the Absorption of Fat and Calories Thereby Enabling Users to Lose Substantial Weight*

For reasons already stated, the advertisement expressly or unambiguously claims that Chinese Diet Tea blocks the absorption of fat, thus enabling users to lose substantial weight. The advertisement also provides that Chinese Diet Tea "[d]oubles the digestion of food in the intestine. This prevents food laying in your stomach for 24 hours or more and contributing to that 'pot belly' look. *The faster digestion of food means fewer calories are absorbed into the body.*" (emphasis added). The advertisement thus again advances the functional equivalent of an express claim that Chinese Diet Tea blocks the absorption of fat and calories thereby enabling users to lose substantial weight.

5.      *Claim Five – Chinese Diet Tea Causes Substantial Weight Loss For All Users*

The advertisement provides the following:

> **GUARANTEED!** Chinese Green Diet Tea has been clinically trialed on 163 patients. All participants lost between 18 lbs and 75 lbs over the 12 week trial period. If you do not lose similar amounts of weight we guarantee to refund your purchase price in full (less s/h). **REMEMBER**, the more Chinese Green Diet Tea you drink, the more weight you may lose!

In the alleged clinical trial, "*all* participants" lost between 18 and 75 pounds. That statement necessarily implies that all users will lose comparable weight. In addition, the advertisement's four testimonials all touted substantial weight loss that users purportedly experienced. One testimonial proclaimed that "**I Lost 64 lbs in 10 Weeks!**" Again, "[w]hen an advertisement contains a testimonial reflecting the experience of an individual with a product, there is an implicit representation that such experience reflects the typical or ordinary results anyone may anticipate from use of the product." *In the Matter of Porter & Dietsch, Inc.*, 90 F.T.C. 770, 1977

FTC LEXIS 11 at *147. The Chinese Diet Tea advertisement admittedly does not state that "all users" will lose substantial amounts of weight. But that message is unambiguously implied from the advertisement's language.

Finally, the advertisement contains no disclaimers. It does not state that Chinese Diet Tea would have less of an effect on certain individuals. It does not state that heavier individuals will lose more weight than lighter individuals. It does not state that only individuals who diet will lose more weight. It does not state that only individuals who exercise will lose more weight. Reading the advertisement as a whole, it plainly claims that all users will experience substantial weight loss.

6. *Claim Six – Chinese Diet Tea is Clinically Proven to Cause Rapid and Substantial Weight Loss Without the Need to Reduce Caloric Intake or Increase Physical Activity*

For reasons already stated, the Chinese Diet Tea advertisement claims that tea drinkers will experience substantial weight loss without the need to reduce caloric intake or increase physical activity. In addition, other portions of the advertisement indicate that Chinese Diet Tea is clinically proven to yield those results. Again, the advertisement contains the following passage – "**GUARANTEED!** Chinese Green Diet Tea has been clinically trialed on 163 patients. All participants lost between 18 lbs and 75 lbs over the 12 week trial period. If you do not lose similar amounts of weight we guarantee to refund your purchase price in full (less s/h). The advertisement also provides that "[c]linical trials have shown that by drinking a cup of Chinese Green Diet Tea your body will absorb less sugar and animal fats. Participants on Chinese Green Diet Tea clinical trials carried on eating a normal healthy measure of sugar and fats – but they still lost weight." As such, the advertisement expressly claims that Chinese Diet Tea is clinically

proven to cause rapid and substantial weight loss.

In conclusion, I hold that the advertisement expressly makes the alleged claims, or at least so strongly and unambiguously implies those claims that the claims are the functional equivalent of express claims.

      B.      <u>Are the Alleged Claims Made in the Chinese Diet Tea Advertisement False and Misleading?</u>

Defendants assert that the claims made in the Chinese Diet Tea advertisements are not false and misleading. Specifically, the defendants assert that green tea does, in fact, help individuals to lose weight. Defendants retained Dr. Hasan Mukhtar, Ph D. to support the claims in the advertisement. Mukhtar is a professor at the University of Wisconsin in Madison, focusing primarily on dermatology and cancer research. *See* Mukhtar Curriculum Vitae, Ex. A to Mukhtar Report, Def. Ex. 1. Mukhtar has a Ph.D. in biochemistry and is purportedly a leading expert on green tea. *See id*. Mukhtar has no significant education or experience related to nutrition. *See id*.

Mukhtar's report assessed the credibility of the following claims:

    a.      The consumption of green tea can be a useful part of a weight reduction program;
    b.      The consumption of green tea helps reduce sugar absorption;
    c.      The consumption of green tea helps reduce fat absorption;
    d.      The consumption of green tea increase metabolic rates to help burn calories.

Mukhtar Report, Def. Ex. 1 at 4. In his report, Mukhtar comments that "there is sufficient evidence that consumption of green tea, especially the catechins present herein, by humans could lead to weight reduction." *Id*. at 6.

Mukhtar drew his conclusions from several studies. From one study performed by A.G.

Dulloo, et al., Mukhtar concluded that the "oral administration of . . . green tea extract stimulated thermogenesis and fat oxidation and thus has the potential to influence body weight and body fat composition via changes in both EE and substrate utilization." *Id*. at 8. Mukhtar interpreted a study on rats performed by J.J. Choo from Kunsan National University in Korea that "green tea consumption exerts potent body fat-suppressive effects in rats fed on a high-fat diet" and that "this effect resulted in part from reduction in digestibility and to much great extent from increase in brown adipose tissue thermogenesis through beta-adrenoceptor activation. This study strongly suggests that consumption of green tea by humans could reduce body fat." *Id*. at 9.

Mukhtar next cites a study from Kao, Hiipakka and Liao. Mukhtar concludes from the study that the daily consumption of between two to four cups of green tea "may mimic some of the acute effects of EGCG," and that "long-term consumption of green tea may decrease the incidence of obesity and perhaps, green tea components such as EGCG may be useful for treating obesity." *Id*. at 9-10. Mukhtar cited a study from K. Diepvens, et al. that performed a double-blind placebo study on 46 female subjects. *Id*. at 10. The subjects were given green tea extract and placed on a low-energy diet on health-related blood parameters. *Id*. The study found "modest weight loss" from green tea consumption. *Id*. at 10-11.

Mukhtar cited a study by T. Murase, A. Nagasawa, J. Suzuki, T. Hase, and I. Tokimitsu. *Id*. at 11. The study investigated the long-term effects of feeding tea catechins to mice. *Id*. The study found that the "supplementation with tea catechins resulted in a significant reduction of high-fat diet-induced body weight gain," and that the "stimulation of hepatic lipid metabolism might be a factor responsible for the anti-obesity effects of tea catechins" on mice. *Id*. "The authors suggested that long-term consumption of tea catechins is beneficial for the suppression of

diet-induced obesity." *Id*. Finally, Mukhtar cites an advertisement by a Japanese Pharmaceutical Company that claims concentrated green tea catechins have been clinically trialed to cause individuals to lose 10 percent of their body fat in three months. *Id*. at 12.

Mukhtar thus concluded that:

    a.    The consumption of green tea can be a useful part of a weight reduction program;
    b.    The consumption of green tea can help reduce sugar absorption;
    c.    The consumption of green tea can help reduce fat absorption;
    d.    The consumption of green tea can increase metabolic rate to help burn calories. . . .
Chinese Diet Tea will also have these beneficial effects against obesity.

*Id*. at 12-13.

Even assuming the truth of Mukhtar's conclusions,[10] the report does not support the claims the advertisement makes because the conclusions do not address the claims as alleged in the complaint; the conclusions addresses only whether it is possible that green tea can help reduce weight. Mukhtar's opinions about green tea are not as strong as the advertisement's claims about green tea. Mukhtar concludes that Chinese Diet Tea "*could lead to weight reduction*," *id*. at 6, and that "[t]he consumption of green tea *can be a useful part* of a weight reduction *program*." *Id*. at 12. The consumption of green tea *can* help reduce sugar absorption, *can* help reduce fat absorption, and *can* increase metabolic rate to help burn calories. *Id*. Moreover, at his deposition, Mukhtar was asked if the statement "Chinese Diet Tea causes rapid and substantial weight loss without the need to reduce caloric intake or increase physical activity" was accurate. He responded that "the underlying message is correct, but the statement

---

[10] It is substantially unclear whether the studies Mukhtar cites actually support his conclusions.

is too strong." Mukhtar dep. at p. 38. Mukhtar continued that, to make the statement accurate, the advertisement would need to say "*may* cause rapid and substantial weight loss," *Id*. at 40 (emphasis added), but agreed that the statement, as it exists, is "too strong." *Id*. But the advertisement claims, for example, that Chinese Diet Tea *will* lead to *rapid and substantial* weight loss *without decreasing caloric intake or increasing physical activity*. Indeed, if the advertisement made relatively modest claims, Mukhtar's report may be supportive and this case may have a different posture. But nothing in Mukhtar's report, nor any of the articles he cites support the specifically alleged claims, as opposed to some generalized notion that drinking green tea can be a useful part of a weight reduction program.

In addition to the fact that Mukhtar's report is not supportive of the advertisement's claims, many of the advertisement's claims are comprised of representations of objective facts that are either wholly without support or patently false. The advertisement claims that Chinese Diet Tea was clinically trialed on 163 patients, all of whom lost between 18 and 75 pounds in 12 weeks. There is no admissible or probative evidence to support the fact that a trial was ever performed on Chinese Diet Tea, much less that the trial yielded the claimed results. The advertisement claims that Chinese Diet Tea eliminates 91 percent of absorbed sugars and 83 percent fat absorption. There is no evidence supporting those numbers. The advertisement provides for various "courses" that a user can take to lose up to 25 pounds over 4 weeks, up to 50 pounds over 8 weeks, and up to 75 pounds over 12 weeks. Again, there is no evidence supporting those numbers. Some of the testimonials paint a dramatic and startling picture – "**I Lost 64 lbs in 10 Weeks**," "I lost weight so fast my doctor ordered me to slow down." There is no evidence supporting the fact that those testimonials were actually made in the first instance,

much less proof that the testimonials are true.  The advertisement provides that Chinese Diet Tea "[d]oubles the digestion of food in the intestine.  This prevents food laying in your stomach for 24 hours or more and contributing to that 'pot belly' look."  There is no evidence that Chinese Diet Tea doubles the digestion of food in the intestine, no evidence that Chinese Diet Tea acts as a type of laxative to prevent food from laying in an individuals stomach, and no evidence to support the claim that the tea acts to reduce the "pot belly" look.  In short, the advertisement's claims either unsupported or patently false.

By contrast, the FTC has presented reliable evidence to contradict the alleged claims.  The FTC submitted an expert report from Edward R. Blonz, Ph.D., M.S., F.A.C.N.  Blonz holds a Ph.D. in Nutrition.  In contrast to Mukhtar, Blonz considered the specific claims that the Chinese Diet Tea advertisement made, as alleged in the complaint.  Blonz found that all claims were false and unsupported.  Blonz Rep. at 6-7.  Blonz reported that "[w]eight loss is a complex and difficult process.  There are well-established general principles of weight control.  The difference between energy intake and energy output, *i.e.*, energy balance, is the ultimate determinant of weight loss and weight change."  *Id*. at 10.  Blonz continued that "excess body weight relates to the excess energy stored in the adipose tissue," and that "[a] small weight change can occur with water gain or loss, but significant weight loss cannot occur in the absence of a negative energy balance.  A negative energy balance can be brought about either by calorie restriction or by increasing caloric expenditure through physical activity while keeping caloric intake constant."  *Id*. at 11.

Blonz concluded that the weight loss benefits claimed in the advertisement "are not within the realm of plausible science."  *Id*. at 17.  The caloric deficit required to induce the

claimed weight loss "cannot be achieved under normal circumstances, and it certainly cannot be achieved without extreme reductions in caloric intake coupled with dramatic increases in physical activity." *Id.* "Weight loss would be even less likely if users continued to eat substantial amounts of foods with a high caloric density, such as foods with high sugar and fat content. No physiological mechanism has been reported in the peer-reviewed scientific literature demonstrating how drinking green tea can block the absorption of fat and calories sufficient to cause substantial weight loss in humans. There is no scientific support that Chinese Diet Tea could work in the manner claimed for *any* user. Therefore it is wholly without scientific merit to state that the product could work as claimed for all users." *Id.* (emphasis added).

Simply stated, the claims the advertisement makes are either false or unsupported.[11] Given the complete lack of support for the specific claims made in the advertisement, and given Blonz's credible report that the claims in the advertisement are both unsupported and beyond the realm of scientific plausibility, I hold that the advertisement's claims are false and misleading.

C.   Are the Advertisement's Claims "Materially" False or Misleading?

"A 'material' misrepresentation is one that involves information that is important to consumers, and that is therefore likely to affect a consumer's choice of or conduct regarding a

---

[11] In considering false advertising claims, the FTC has held that "[t]here are two different analytic routes by which complaint counsel can prove advertisements are likely to mislead. One is to carry the burden of proving that the express or implied message conveyed by the ad is false. The other is to show that the advertiser lacked a reasonable basis for asserting that the message was true." *In re Thompson Medical Co.*, 104 F.T.C. 648, 1984 FTC LEXIS 6, *380. The FTC continued, "[f]or example, if an advertisement claims that a new brand of orange juice is more nutritious than others on the market, the Commission could put on its own evidence showing the claim to be false or it could show that the substantiation the advertiser had to support the ad did not provide a reasonable basis for the claim of greater nutritional value." *Id.* at *380-*381 In this case, the FTC has met its burden through both analytic routes.

product.  Proof of actual consumer injury is not required." *In the Matter of Kraft, Inc.*, 114 F.T.C. 40, 1991 FTC LEXIS 38, *38 (1991).  In considering false advertising claims, the FTC presumes several types of claims to be material, including any express claim, or "implied claims where there is evidence that the seller intended to make the claim." *Id.*; *see also In re Thompson Medical Co.*, 104 F.T.C. 648, 1984 FTC LEXIS 6 at *373 ("The Commission considers certain categories of information presumptively material.  First, the Commission presumes that express claims are material.  Similarly, when evidence exists showing that a seller deliberately made an implied claim, the Commission presumes materiality.").  The underlying rationale for finding a claim to be presumptively material in both instances is "the assumption that the willingness of a business to promote its products reflects a belief that the consumers are interested in the advertising." *Id*.

In this case, I have held that the subject advertisement made all six of the alleged claims either expressly, or by such strong implication that they are the functional equivalent of an express claim.  As such, those claims are presumed to be material.

Even if I had found the advertisement made the claims only implicitly, the statements in the advertisement were so unambiguous and repetitive that they were clearly intended by the advertiser to make the alleged claims, and as such, can be presumed material.

Finally, even if the claims were not intended by the advertiser, no reasonable juror could find, after reading the advertisement, that the claims were not "important to consumers" and thus "likely to affect a consumer's choice of conduct regarding a product."  The advertisement is almost entirely a weight loss advertisement.  Therefore, consumers who purchases Chinese Diet Tea because of the advertisement are thus purchasing Chinese Diet Tea because it would have

the advertised effect on weight loss.  As such, I hold that the alleged claims are material.

## IV.    Liability of Individual Defendants

### A.    Defendants

In its amended complaint, the FTC has named Bronson Partners, LLC and Martin

Howard as defendants.  As discussed above, the advertising at issue is materially misleading.

Because Bronson disseminated that advertising, Bronson is liable.  Likewise, Martin Howard,

who wrote the copy for those advertisements without obtaining outside review, and who is a 50%

owner and managing member of Bronson, is personally liable.   Local R. 56(a)(1) Stmt. ¶¶ 8-9,

14, 64-67.  The defendants' argument to the contrary – that Howard must have been "aware that

fraud was highly probable and intentionally avoided the truth" – is unavailing.  Summ. J. Resp. at

39 (quoting *FTC v. Garvey*, 383 F. 3d 891, 902 n.12 (9th Cir. 2004)).  Here, the claims made in

the advertisements for Chinese Diet Tea are so sweeping and far-fetched as to render their

fraudulent nature highly probable.  Even if Martin Howard researched the properties of green tea

on the internet, *id.*, he avoided conducting any reliable research concerning whether Chinese Diet

Tea could possibly provide the sort of weight loss results promised, including whether any study

had ever been done that produced the sort of dramatic and rapid weight loss indicated in the

advertisements.  Because Howard was responsible for the text and dissemination of the

advertisements, and because he failed to engage in any meaningful investigation of such bold

claims, he is personally liable for Bronson's false advertising.  The amounts and percentages of

each party's liability will be determined at a future hearing on damages.[12]

---

[12] It is important to note that this ruling addresses only the question of liability on the
plaintiff's false advertising claims.  Nothing discussed here should be construed in a manner that
would preclude any future claims for indemnification or contribution, if appropriate.

B.     Relief Defendants

On June 8, 2005, I granted the FTC's motion to amend its complaint to add relief defendants Sandra Howard and H & H Marketing, LLC.  Courts of appeal have approved claims against "relief" or "nominal" defendants, and the Second Circuit has described a relief defendant as "a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir.1998).  Although the *Cavanagh* Court addressed the question of relief defendants in a securities enforcement action, district courts have applied that same analysis in FTC actions, and I do so here.  *See, e.g., FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 1013, 1020 (N.D. Ind. 2000).

The parties have not fully briefed, and I did not hear argument concerning, whether either relief defendant should be held jointly and severally liable in order to satisfy any judgment in favor of the FTC.  Under section 13(b) of the FTC Act, I have equitable powers over "innocent persons" in order to accomplish such relief as repayment, restitution, rescission or disgorgement of any unjust enrichment.  *F.T.C. v. AmeriDebt, Inc.,* 343 F. Supp. 2d 451 (D. Md. 2004); *see also CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002).

It is not clear from the record evidence presently before me if, how, and to what extent the relief defendants received funds obtained through sales resulting form Bronson's fraudulent advertising.  At the upcoming hearing on damages, the parties should be prepared to present evidence bearing on those questions: (a) if H & H and/or Sandra Howard received money that came from Chinese Diet Tea or Bio Slim Patch sales, (b) how much they received, and (c) if they did receive such money, does either relief defendant have a legitimate claim to it.

**V.      Conclusion**

Advertisements often employ subtle tactics to imply that their product will achieve a desired result or create a desired effect. The advertisement for Chinese Diet Tea is not such an advertisement. I hold that: (1) the subject Chinese Diet Tea advertisement makes the alleged claims expressly, or by such strong implication as to constitute the functional equivalent of express claims; (2) the claims are misleading; and (3) the claims are material. The FTC's motion for summary judgment **(doc. # 98)** is GRANTED with respect to liability on all claims. All issues related to damages will be decided following a further hearing.

It is so ordered.

Dated at Bridgeport, Connecticut, this 10th day of July 2008.


/s/ Stefan R. Underhill_____
        Stefan R. Underhill
        United States District Judge